IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, a/s/o MIKEONE EK ROANOKE, LLC,  Plaintiff, v. WELLS FARGO BANK, N.A.,  Defendant. | Civil Action No. 7:23-cv-00045  By: Elizabeth K. Dillon   United States District Judge |

**MEMORANDUM OPINION**

This action was brought by Continental Casualty Company, as subrogee of Mikeone EK Roanoke, LLC, against Wells Fargo Bank. (*See* Am. Compl., Dkt. No. 8.) Mikeone owns property that it leased to Wells Fargo and where Corinna Dunn was seriously injured in an elevator accident. Dunn settled a lawsuit against Mikeone in state court. Continental seeks to recover the settlement amount, plus costs and attorney's fees, from Wells Fargo pursuant to the indemnification provisions in the lease agreement between Wells Fargo and Mikeone.

Wells Fargo moves to dismiss (Dkt. No. 10), and the court held a hearing on that motion on May 31, 2023 (Dkt. No. 17).[1] For the reasons stated below, the court will issue an order granting Wells Fargo's motion to dismiss.

---

[1] Wells Fargo also moved to dismiss the original complaint. (Dkt. No. 4.) Instead of responding to the motion, Continental filed an amended complaint, which mooted Wells Fargo's motion.

I.  BACKGROUND

The following factual background is taken from the allegations in the amended complaint, which are assumed to be true for purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In deciding this motion, the court also considered various documents, including state court pleadings and orders and the applicable lease agreement (attached to the amended complaint), all of which can be considered when deciding a Rule 12(b)(6) motion.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (explaining that the court may consider "documents attached or incorporated into the complaint"); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (stating that the court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity").

A. **Amended Complaint Allegations**

On September 22, 2004, First States Investors 3300, LLC and Wachovia Bank, N.A. entered into a lease agreement whereby Wachovia would lease the entire building located on the subject property.  (*See* Am. Compl., Ex. 1 (Lease Agreement or Lease).)  Mikeone purchased the property and, as successor owner, is the successor-in-interest of First States and assumed all rights and responsibilities as landlord under the lease.  Wells Fargo is the successor-in-interest of Wachovia and assumed all rights and responsibilities of Wachovia as tenant under the lease.  Continental brings this action as subrogee of Mikeone, its insured, pursuant to the provisions of an insurance policy issued by Continental to Mikeone.

On or about January 29, 2020, Corinna Dunn walked into an elevator at the property.  As she was walking into the elevator, the doors began to close spontaneously.  She jumped back, but

her right arm was caught in the door and crushed, causing her to suffer significant injuries. Dunn filed a lawsuit against Mikeone for her injuries in the Roanoke County Circuit Court. Continental paid $700,000 to resolve Dunn's claims against Mikeone in state court. Continental seeks to recover this amount, plus $67,090.47 in attorney's fees and $42,548.91 in costs. Continental brings claims for express indemnification and, in the alternative, breach of contract.

**B. Lease Language**

The Lease requires Wells Fargo to "keep and maintain, take good care of, and make all needed repairs to, (i) the Leased Premises . . ., excluding, however, the components of the Base Building located within the Leased Premises, and (ii) Tenant Property located outside of the Leased Premises . . .") (Lease § 5.6(a) (emphasis in Lease).) The landlord (Mikeone) is responsible for repair and maintenance of areas outside of the Leased Premises, including Common Areas: "Landlord shall keep and maintain, and make all needed repairs to, the Base Building and the Common Areas in good condition and repair in accordance with respect to Comparable Buildings (any such maintenance and/or repairs for which Landlord is responsible being herein collectively called 'Landlord Repairs')." (*Id.* § 5.5(a).) Elevators are mentioned within the definition of the building's Common Areas: "'Common Areas' shall mean (i) the Building's lobbies and corridors . . . , including the Building's elevators, stairways and other Building Systems providing ingress and egress thereto and therefrom." (*Id.* § 1.1(b).)

The Leased Premises are the areas leased and demised to Wells Fargo: "Subject to and upon the terms hereinafter set forth, Landlord does hereby lease and demise to Tenant, and Tenant does hereby lease and take from Landlord, the Leased Premises." (Lease § 1.2.) The Lease defines "Leased Premises" twice. Section 1.1(a) defines "Leased Premises" by reference to the area marked on the building plans attached as Exhibit B to the Lease, stating that "the

3

Property identified on Exhibit B hereto as being demised and leased to Tenant hereunder, including the areas of the Building so identified and, if applicable, any Drive-Through Banking Facilities so identified." Section 1.1(b) refers back to Section 1.1(a) before clarifying that Leased Premises "shall be deemed to consist only of the space within the inside surfaces of all the demising walls, exterior windows and entrances, and structural ceilings and floors, bounding the area comprising the Leased Premises, at such time."

Exhibit B consists of five drawings, one each for the building's basement and four floors. (Lease, Ex. B at 129–33.) Each of the drawings identifies the area leased by Wells Fargo's predecessor with half-square "L" shapes. All five drawings leave the elevators, stairs, and chases blank; these areas are not marked by the half-square "L" shapes used to identify leased areas.

Finally, the Lease has a provision that requires Wells Fargo to indemnify Mikeone "to the extent" Wells Fargo's negligence or willful misconduct causes "any and all claims, demands, causes of action, fines, penalties, costs, expenses . . . , liens or liabilities . . . ." (Lease § 6.6(a).)

**C. Roanoke County Circuit Court Litigation**

Ms. Dunn filed a complaint against Mikeone in Roanoke County Circuit Court on December 15, 2021. (Ex. B, Dkt. No. 11-2.) Dunn alleged that Mikeone owed her the duty of a common carrier in carrying her in the elevator. Dunn further alleged that Mikeone owed her the duty of ordinary care in the operation and maintenance of the building. Finally, Dunn alleged that Mikeone breached these duties, which were non-delegable, and that Mikeone's negligence caused her injuries. (*Id.* ¶¶ 35–36, 40–43.) Dunn did not allege that Wells Fargo's conduct caused her injuries.

Mikeone failed to timely respond to Dunn's complaint. (Ex. C, Dkt. No. 11-3.) As a result, on March 9, 2022, the Circuit Court entered a default judgment against Mikeone and set a future hearing date to determine damages. (*Id.*) On July 12, 2022, the court awarded damages to Dunn in the amount of $1,100,000.00. (Ex. D, Dkt. No. 11-4.) Mikeone then moved to overturn the default order. This motion was denied on July 28, 2022. (Ex. E, Dkt. No. 11-5.) Mikeone filed a separate lawsuit alleging that the default judgment resulted from Mikeone's insurance broker failing to send the Dunn complaint to Mikeone's insurance carrier. (Ex. F, Dkt. No. 14-1.) Pursuant to a settlement in the Mikeone lawsuit, the default judgment in the Dunn lawsuit was vacated. (Ex. A, Dkt. No. 13-1.) As noted above, Continental settled Dunn's claims against Mikeone for $700,000. (Am. Compl. ¶ 26.)

## II.  ANALYSIS

**A.  Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 18, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, the court must draw "all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences,

unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

**B. Indemnification**

In count one, Continental seeks indemnification for the amount it paid to Dunn to settle her lawsuit against Mikeone. As noted above, the Lease requires Wells Fargo to indemnify Mikeone "to the extent" Wells Fargo's negligence or willful misconduct causes "any and all claims, demands, causes of action, fines, penalties, costs, expenses . . . , liens or liabilities . . . ." (Lease § 6.6(a).) Thus, to state a claim for indemnity, Continental would have to allege facts showing that Dunn's accident was caused by Wells Fargo's negligence.

An essential element of a negligence claim is the breach of a duty owed by a defendant to an injured party. "In Virginia, '[t]he question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.'" *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 253 (Va. 2019) (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 401 S.E.2d 878, 885 (Va. 1991)).[2] "[I]t is well-settled in Virginia that, under the common law, a landlord has no duty to maintain in a safe condition any part of the leased premises that [is] under a [tenant's] exclusive control." *Federico v. Lincoln Military Housing, LLC*, 127 F. Supp. 3d 623, 642 (E.D. Va. 2015) (citing *Isbell v. Commercial Inv. Assocs., Inc.*, 644 S.E.2d 72, 74 (Va. 2007)). Conversely, a landlord "owes the duty to his tenants to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which he has control." *Gulf Reston, Inc. v. Rogers*, 207 S.E.2d 841, 844 (Va. 1974). In this manner, a landlord has "a duty to use ordinary

---

[2] The parties agree that Virginia law applies in this diversity case.

care to maintain in a reasonably safe condition any part of the leased premises that was reserved for the common use of all tenants." *Kesler v. Allen*, 353 S.E.2d 777, 779 (Va. 1987). This duty, if owed, cannot be delegated to another party. *See S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908, 912 (Va. 2004); *Love v. Schmidt*, 389 S.E.2d 707, 709 (Va. 1990).

Wells Fargo owed no duty to Dunn because the elevators were not part of the Leased Premises. As set forth above, Section 1.1(a) of the Lease refers to drawings, which indicate that the elevators are not part of the Leased Premises. Section 1.1(b) limits the Leased Premises to areas between the demising walls, ceilings, and floors. Given the drawings, the elevators are not within the demising walls. Further, the Lease explicitly includes elevators as part of the Common Areas. *Id.* The Lease allocates responsibility for maintaining the Common Areas to the landlord, Mikeone, not the tenant, Wells Fargo. (*Id.* § 5.5(a).)

Continental argues that Wells Fargo's contract with a third party for elevator maintenance creates an issue of fact as to whether Wells Fargo was responsible for elevator maintenance. (*See* Am. Compl. ¶ 14.) Wells Fargo elected to serve as property manager pursuant to Section 3.6(c) of the Lease. (*See* Ex. A, Dkt. No. 11-1.) This election, and Wells Fargo's third-party elevator maintenance contract pursuant to that election, did not alter Mikeone's responsibility for maintaining the elevators pursuant to the Lease. Mikeone's duty, as landlord, to maintain the elevators in a reasonably safe condition is non-delegable. Put another way, the fact that Wells Fargo hired a property manager would not relieve Mikeone of its duties to maintain the property, whether that property manager was Wells Fargo or a third-party. Ultimately, Wells Fargo's separate contract with an elevator maintenance company does not alter Mikeone's underlying independent obligation to repair and maintain the elevators.

Moreover, courts applying Virginia law compare the underlying claim to the indemnity contract to determine if the claim falls within the indemnity requirement. *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (discussing the "eight corners rule").[3] Again, Section 6.6 of the Lease requires Wells Fargo to indemnify Mikeone to the extent that a cause of action brought against Mikeone is caused by Wells Fargo's negligence or willful conduct. Further, the Lease states that Wells Fargo "shall not be liable to" Mikeone for damages caused by Mikeone's negligence. (Lease § 6.6(b).) Dunn's lawsuit against Mikeone alleged that her injuries were caused by Mikeone's negligence. Dunn alleged that she was injured in an area where Mikeone owed a non-delegable duty of maintenance.

Continental argues that because the default judgment against Mikeone in state court was vacated, it has no preclusive effect in this litigation. The court is not giving preclusive effect to the vacated judgment in the Dunn lawsuit or any aspect of the litigation between Dunn and Mikeone in state court. *See, e.g., Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 890 (Va. 2017) (discussing res judicata, which involves both issue and claim preclusion). Instead, the state court litigation is significant because, pursuant to the eight corners rule, Dunn's claims against Mikeone do not fall within the Lease's indemnity provision.

For these reasons, count one fails to state a claim for indemnification, and it will be dismissed.

---

[3] This concept is known as the "eight corners rule" because "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp.*, 725 S.E.2d at 535. "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *Id.* The Supreme Court of Virginia has not directly addressed whether the eight corners rule applies to contracts other than insurance policies, such as the Lease at issue in this matter, but it has followed the same basic analysis in non-insurance cases. *See, e.g., City of Richmond v. New Irish, LLC*, Record No. 181226, 2019 WL 5459231 (Va. Oct. 24, 2019) (unpublished opinion).

## C. Breach of Contract

Plaintiff's breach of contract claim, pled in the alternative to the indemnification claim, alleges that Wells Fargo breached its obligation under terms of the Lease by failing to properly maintain and/or repair the elevators, directly causing Dunn's injuries. (Am. Compl. ¶¶ 30–32.) This claim must be dismissed because, as the court has explained, Wells Fargo did not have a duty to maintain or repair the elevators. Continental cannot recover indemnity on behalf of Mikeone outside the circumstances set forth in the Lease's indemnity provision. *See, e.g.*, *Collier v. Land & Sea Rest. Co., LLC*, 972 F. Supp. 2d 870, 877 (W.D. Va. 2013) (explaining that "[a] party is permitted to indemnify itself, 'against its own negligence[,] through a contractual provision negotiated at arm's length with a willing indemnitor.' When such an indemnification provision exists, it should be enforced") (quoting and citing *Estes Exp. Lines, Inc. v. Chopper Exp., Inc.*, 641 S.E.2d 476, 480 (Va. 2007)).

Accordingly, the court will grant the motion to dismiss as to count two.

## III. CONCLUSION

For the reasons stated herein, the court will issue an order granting Wells Fargo's motion to dismiss.

Entered: September 19, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

9